UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RAAMIE IBRAHIM,<br><br>Plaintiff,<br><br>v.<br><br>AXIOM BANK NATIONAL ASSOCIATION<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff, Raamie Ibrahim ("Mr. Ibrahim" or "Plaintiff) by and through its undersigned counsel, hereby files this Complaint, seeking monetary damages and such other relief as the Court deems appropriate, against Defendant Axiom Bank N.A. ("Axiom Bank" or the "Bank"), and in support thereof alleges as follows:

## THE PARTIES

1. Plaintiff Raamie Ibrahim is an individual residing at 2354 Emerald Springs Dr., Apopka, Florida 32712 and is a former employee of Axiom Bank.

2. Defendant Axiom Bank is a national bank with its principal place of business and headquarters at 258 Southhall Lane, Maitland, Florida 32751.

3. Axiom Bank is a national bank insured by the Federal Deposit Insurance Corporation ("FDIC") and a member of the Federal Reserve System ("FRS"). Axiom Bank's Chief Executive Office ("CEO") is Ross Breunig.

4. Axiom Bank is subject to regulation by several federal agencies, including the Office of the Comptroller of the Currency ("OCC"), the FDIC, and the Federal Reserve (collectively referred as the "Agencies").

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the federal whistleblower law codified at 12 U.S.C. § 1831.

6. Defendant is subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(1)(d) and Fla. Stat. § 48.193, as Defendant has engaged in tortious acts within the State as set forth herein arising out of the business and service contracts with which Defendant has engaged in this State, including but not limited to employing Plaintiff in this State, paying employment taxes in this State, collecting deposits from Florida customers, and opening and maintaining and servicing accounts with active retail customers in Florida. By engaging in such actions, Defendant has purposefully availed itself of the benefits and responsibilities of doing business in Florida and thus has the requisite minimum contacts with this State.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(1) as Defendant's principal place of business and headquarters are located within the Middle District of Florida.

## FACTUAL ALLEGATIONS

### A. Mr. Ibrahim's Employment with Axiom Bank

8. In January of 2021, Mr. Ibrahim commenced his employment with Axiom Bank as a Senior Vice President. He was promoted to Executive Vice President of Retail one year later.

9. Mr. Ibrahim was incredibly successful in his position, far exceeding his performance goals. For example, in 2022, the Bank did not expect any increase in deposits. Yet, Mr. Ibrahim led the Bank to an $88 million increase in deposits. Mr. Ibrahim continued his success into 2023- in May of 2023 alone, deposits at Axiom Bank increased by $44 million under Mr. Ibrahim's leadership. In terms of net income for the retail division, Mr. Ibrahim's performance is even more impressive, shattering his 2023 budget by producing $2 million in net income despite a forecasted loss of $2.5 million, over just the first five months of the year.

### B. Mr. Ibrahim Raises Concerns Related to Axiom Bank's Unlawful Practices

10. In and around the spring of 2023, Mr. Ibrahim became uncomfortable with certain practices and activities in which the Bank began to become involved. These included practices that, in Mr. Ibrahim's opinion, jeopardized the Bank's

compliance with anti-money laundering laws, federal safety and soundness requirements for depository institutions, and compliance with specific OCC regulations and requirements that were particularly imperative due to the fact that the Bank was already considered a Troubled Institution.

11. Mr. Ibrahim became concerned that Axiom Bank's CEO was prioritizing revenue and growth without due regard for compliance with federal banking laws and regulatory requirements.

12. For instance, in late April of 2023, Mr. Ibrahim objected to the Bank's extensions of unsecured Credit in the form of overdraft protection to Banking as a Service Partners ("BaaS Partners"), without ascertaining their creditworthiness. These overdrafts, provided without charging fees or interest, amounted to millions of dollars in free, unsecured loans, without knowledge of the creditworthiness of the borrowers.

13. Mr. Ibrahim also raised concerns over Axiom Bank's core system, the sufficiency of the platform, and whether personal relations between the CEO and certain Board members with involvement in CSI (the Company that provides the core system) were being prioritized over legitimate concerns pertaining to the Bank's safety and soundness.

14. Mr. Ibrahim further objected to Axiom's initiation of new business programs, without first obtaining non-objection letters from the OCC and without

review by the Bank's internal New Product Risk Committee, as required by written policies. One such project, DolarApp, was of particular concern to Mr. Ibrahim as it entailed cross-border movement of funds, which triggered significant concerns as to whether the Bank's BSA/AML controls are sufficient, among other things.

15. But when Ibrahim raised these concerns with the CEO, Ross Breunig, he told Ibrahim to the effect that "he did not want to hear it" and shut down the conversation.

16. Concerned about the legal implications associated with Mr. Breunig's actions, Mr. Ibrahim sent an email to Mr. Breunig shortly thereafter showing the amount of the overdrafts. Mr. Breunig never responded to the email.

17. During leadership meetings in April and May of 2023, Mr. Ibrahim again raised objections to CSI issues and the DolarApp.

C.     **Axiom Bank Retaliates Against Mr. Ibrahim**

18. Almost immediately after Mr. Ibrahim objected to these practices, Axiom and Mr. Breunig began a pattern of retaliation. After the April 2023 leadership meeting where Mr. Ibrahim raised concerns relating to CSI and the DolarApp, Mr. Breunig began canceling Executive Board of Director meetings that Mr. Ibrahim attended.

19. Following a leadership meeting in May 2023, where again Mr. Ibrahim raised concerns about CSI, DolarApp and the overdraft positions, Mr. Ibrahim began receiving email cancellations to multiple committees and Board meetings.

20. Upon inquiry, Mr. Ibrahim learned the meetings were not being canceled, but rather he was being uninvited without explanation. Mr. Breunig's hostility with Mr. Ibrahim also became noticeably apparent during this time. On one occasion, Mr. Ibrahim politely went to Mr. Breunig's office to advise him about a critical breakthrough with a joint venture. Mr. Breunig's response was to look up from the newspaper he was reading to simply say "OK, you can get out now."

21. In June of 2023, Mr. Breunig told Mr. Ibrahim that he no longer needed to present the Retail unit's strategy to the Board in the June 2023 meeting - Mr. Breunig advised that he was taking it over.

22. Around the same time, Zaheed Afzal was hired as a consultant and began overseeing Mr. Ibrahim's group, effectively demoting him to a subordinate. This is particularly puzzling, given that Mr. Ibrahim was on track to produce, in a single month, the total amount of new revenue projected for the entire year (which he had already eclipsed by a multiple).

23. On or about June 12, 2023, a group of Axiom employees, including but not limited to Raamie Ibrahim, Wesley Ward, John Zazzera and Paul Ciccotto,

reported the aforementioned concerns to the Federal Reserve Board on or about June 12, 2023.

24. Axiom Bank knew or strongly suspected that Ibrahim had assisted in complaining to federal banking authorities as a result of inquiries raised by the OCC following the employees' complaints.

25. On June 29, 2023, Mr. Ibrahim was advised his position was being eliminated - a decision that is surprising for a Troubled Bank given that Mr. Ibrahim's financial contributions to Axiom far exceeded his compensation.

26. Almost immediately after initiating these complaints and based on Breunig's suspicion that Ibrahim was responsible for Complaints that led the OCC to initiate additional inquiries regarding Bank practices, Ibrahim - along with the aforementioned employees - were terminated based on an alleged reduction in force and elimination of their positions. Importantly, each of the persons responsible for the suspected complaints to federal banking authorities was terminated almost immediately before the OCC's follow-up visits scheduled after the suspected complaints.

27. While Axiom Bank has claimed that Mr. Ibrahim's positions were eliminated along with the other employees that objected to Mr. Breunig's unsafe and unlawful practices, the reality is that within ninety days of the purported job eliminations, Axiom Bank began to replace these positions, including by hiring a

new Chief Compliance Officer as well as the other positions that were allegedly eliminated at the same time.

28. Mr. Ibrahim's termination was not for cause and did not occur in the context of a change in control. Upon information and belief, Mr. Ibrahim's termination was the result of the Bank's desire to remove and retaliate against him for making complaints to federal banking authorities.

29. As a result of his unlawful termination, Mr. Ibrahim has sustained damages caused by the Bank in excess of $500,000.

## COUNT I- WHISTLEBLOWER COMPLAINT
## (12 U.S.C. § 1831(j))

30. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

31. Section 1831(j)(a)(1) of the Federal Deposit Insurance Act provides that "[n]o insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privilege of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal Banking agency or to the Attorney General regarding (A) a possible violation of any law or regulation or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; by the depository institution or any director, officer, or employee of the institution." 12 U.S.C. § 1831(j)(a)(1).

32. Plaintiff, both directly and indirectly, objected to the unlawful practices of Axiom Bank and, further, both directly and indirectly, reported these violations to the OCC and/or Federal Reserve and/or participated in these reports. These actions constitute protected expressions pursuant to 12 U.S.C. § 1831(j).

33. Axiom Bank attempted to prevent Plaintiff from exercising his whistleblower rights by blocking his access to communicate with other Axiom Bank employees, the Board of Directors, and the OCC.

34. When as a result of additional OCC inquiries Axiom Bank suspected that Ibrahim had participated in or initiated complaints to federal banking authorities it terminated his employment. As a result, Plaintiff has suffered an adverse action by Axiom Bank that is causally linked to his whistleblower activities.

35. As a result of Axiom Bank's actions, Mr. Ibrahim has suffered monetarily damages in an amount to be determined at trial, but such damages are at least in excess of $500,000.00 and he is entitled to the reimbursement of all legal fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as to all counts, Plaintiff respectfully requests that the Court enter judgment in its favor and award the following relief against Defendant:

A. That Plaintiff be awarded compensatory damages in the amount of at least $500,000 or an amount to be determined at trial;

B. That Plaintiff be awarded its actual and consequential damages according to proof at trial;

C. That Plaintiff be awarded liquidated and treble damages as permitted by law;

D. That Plaintiff be awarded prejudgment interest to the fullest extent available under applicable law;

E. That Plaintiff be awarded costs and reasonable attorney's fees to the fullest extent available under applicable law; and

F. That Plaintiff be granted such other and further relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff respectfully requests and demands a jury trial on all issues so triable.

Respectfully submitted,

MITCHELL SANDLER LLC

*/s/ Courtney E. Walter*
Courtney E. Walter (FBN 106228)
Ari Karen (*pro hac vice forthcoming*)
Sean Harding (*pro hac vice forthcoming*)
1120 20th Street, NW, Suite 725
Washington, D.C. 20036
(202) 886-5267
cwalter@mitchellsandler.com
akaren@mitchellsandler.com
sharding@mitchellsandler.com

**Attorneys for Plaintiff, Raamie Ibrahim**